Good morning, Your Honors. Mark Mosser on behalf of the Appellant. Good morning. It's still morning. I said it's still morning. Yes, it is. It's been one morning now. Your Honors, the retaliation issue in this case is extraordinarily strong. The temporal nexus here is about 10 minutes. You have a woman who knows, because she's been told by the owner, of two prior complainants, both of whom have complained about sexual harassment activities by the two perpetrators. She knows that. That's that we start there. Then you have repeated, repeated remarks about this French maid costume thing, that the employer tries to trivialize and minimize those. They try to reduce them down to a single incident. It's not a single incident. It's the same remark made over and over and over again. She didn't complain about that at the July 14 meeting, did she? She had complained previously about that. But not at the court report meeting? I'm not sure. That was an 11-page transcript of the questions. I don't think it's in there. It probably isn't. But she had repeatedly attested when she complained eight or nine times to Mr. Ramirez himself. Those so-called meetings, Judge, they were cursory. And the complaint that she made on the day she was fired was a Draper complaint. It was a complaint of erotic-based harassment, which had morphed into just plain retaliatory harassment. Did she complain about it as retaliation specifically? I mean, did she say that Dan is now retaliating against me because of my complaints? Right. But it obviously wasn't retaliation of the law. No. It may have been. But I'm saying, did she say that to Mario at the July 29 meeting? Yes. And that's what? That Dan is retaliating against me. Right. And Mr. Ramirez admits that. He says she was referring to the way Dan was treating her, allegedly. That was his testimony. But as retaliation or as a separate and distinct event? No. She wasn't complaining about a discreet event. She was complaining about the retaliatory hostility. I know that's what you want to call it. Okay. And I understand that's your theory. What I'm asking you is, was her complaint at the July 29 meeting that Dan is retaliating against me or just that Dan is doing X, Y, Z? Her phrase, her exact language, Your Honor, was that he was being vengeful and hostile towards her. Okay. Vengeful, she said? Vengeful and hostile. Okay. I think we're ‑‑ I mean, I'm not trying to not answer your question, Judge. The way we use retaliation, it's a term of art, there's a discreet act. We're not ‑‑ we're alleging ‑‑ I understand your legal argument. I'm just trying to find out what happened. Right. We're alleging the retaliation was the firing. But, no, she did not complain about a discreet act of retaliation at that meeting. She complained that he was being vengeful, that both Mr. Ellis and Mr. Jocelyn were being vengeful and hostile towards her. Does that answer Your Honor's question? Partly. Thanks. I'll read it again. I guess I'm being too much of a lawyer in the sense that I don't want to say ‑‑ It appears that in her complaint to the Nevada Equal Rights Commission, she only talks about the discharge as being retaliatory. Right. That's all we're alleging, Your Honor. We're not alleging ‑‑ we're alleging retaliatory hostility is a part and parcel of the hostile work environment, and we're alleging that the complaint of retaliatory hostility caused the retaliation. And because Mr. Ramirez fields this complaint of retaliatory hostility, and within ten minutes he's down in her office and he says, pack up your stuff and escorts her from the building. The complaint of retaliatory hostility is protected activity. Right. And the act of retaliation under the law is the firing. And there's a very, very strong nexus. And Mr. ‑‑ my point, Mr. Ramirez basically admits that. In his words, he says that my client says, I'm not going to take this shit anymore, referring to the way that she was being treated by Mr. Ellis and Mr. Jocelyn, the retaliatory hostility, and his response to that. He never ‑‑ and, Your Honors, he never investigates that complaint. That complaint was never investigated. Well, being mistreated in the workplace is not a valid basis for discrimination. I mean, our cases are replete with statements that we're not, you know, workplace referees. We don't make people play nice at work. There has to be some kind of nexus to the protected status in order for it to be discrimination. It can't just be that somebody used profanity or they made raunchy comments in the workplace. There's a direct ‑‑ there's a crystal in the direct nexus here, Your Honor. She's complaining about the French maid remarks, the tampon remarks, the orgasm remarks. She complains about that. And then the erotic-based conduct is more. And the case on that, Your Honor, is Draper v. Port Rochester. I know it because I litigated that case in front of this Court. The citation is 147, Fed 3rd, 1104, 9th Circuit, 1998. And Draper, Kateri Draper, went into her boss's office to harass her, and she said, You're still harassing me, and I don't like it. And his response was, in her presence, he called his boss and derisively laughed. And Judge Reed, very good judge, said that's ‑‑ said exactly what you're saying, Your Honor. He said, That's not sexual harassment. And I said, Sure it is. Because the derisive laughter is in direct response to a complaint of ongoing harassment. And this Court talked about that. And Draper, the Court said, There's no difference, Your Honor. When you morph erotic-based harassment, and the linkage is clear, when you morph erotic-based harassment into hostility because the victim complained about the erotic-based harassment, it does not break the continuum. It's a form of harassment, sexual harassment, because the connection is crystal clear. If the ruling wasn't like that, Your Honor, employers would be at liberty, managers would be at liberty to harass the daylights out of any employee who complained. As long as you didn't rise to the level of a discreet act under retaliation, you can make that employee's life miserable. And because it's not directly, you're clever enough to back off of the B word or the C word or the slap on the butt or something that is clearly sexual or gender-based because you're clever enough to disguise it. It's okay. That opens Pandora's box for harassers to routinely violate Title VII. And this Court said in Draper, and it's a good decision, you can't do that. And the connection here, Judge, is about as clear as you get. And you look at the, there's no investigation of that complaint, and the response is retaliatory. In fact, the employer in this case would take it one step further. Not only is it okay to back off the direct erotic-based or gender-based harassment and just be plain hostile, but when the person complains about it, the employer can then, with impunity, fire that person. That renders meaningless Title VII. It takes the heart right out of it because now you've got a way to punish young women or women in general or any member of the protected class who complains about erotic-based or gender-based behavior. There was more going on here than just the comments that you're highlighting. There were issues about whether or not your client was going to do work that was directed to her to do. I mean, there was kind of a bad court relationship. Those are issues of practice. I mean, the issue about whether she was going to clean the trailer, I mean, the statement was made to her, clean the trailer in your French maid costume. Was that part of her responsibilities or no? I'm not wearing a French maid costume. Not the French maid costume, but was it part of her responsibility to clean? Not formally judged, but the response, I think you have to – that's really a factual issue. You have to – My point was that you just kind of isolated out these comments that you're talking about, but there was a continuum of discussion between them, not just about these items, but there was a lot going on in the workplace. Right, of course there was, and I don't mean to gloss over that. My point was that the retaliation issue is so clear because she comes in, she complains of the retaliatory hostility, and 10 minutes later she's fired with no investigation. And you look at Mr. Ramirez's admissions, and we're not in a fight really about that much of a fight about what happened there. There's some allegation that she swore. She probably did say, I'm not going to take this shit anymore. There's some allegation that she made a threat that after he fired her that you're going to pay for this. She denies that. But those are really minor factual disputes. The central facts about that termination are admitted. But the conversation on July 29th, during which she either did or did not get fired, depending on what you believe, was concerned only with what Dan had done by way of retaliation. Isn't that right? I believe the testimony was that she said that they both were being vengeful and hostile towards her. Okay, but the other conduct was not mentioned. What the complaint was about was about what happened after the July 14th confrontation. Isn't that right? Right. So the district court said what, that that was the only alleged protected conduct in which the plaintiff was engaged, was her complaint about how Mr. Joslin treated her while Mario was on vacation? Right. So why was it in the district court's mind? Why did that matter? I can't speak for what was in the district court's mind, Your Honor, but my observation of that would be, you know, it goes back to our point, our repartee before, where we were talking about the use of terms of art. Think about that for a minute. Even if Ms. Westendorf was not a lawyer, even if she misapprehended retaliation, it doesn't matter. I mean, I can see there was no act of retaliation as we regard it under the law. It doesn't matter because it's a good faith complaint. It's protected activity. And the response to the protected activity is termination of employment with no investigation. That's retaliation. But didn't the supervisor, the owner of the company, think she had quit? That's a huge question of fact, Judge. There's a huge dispute around it. Well, it's not a question of fact about what he thought. I mean, he tells us what he thought, right? Is that a question of fact that he says, I thought she quit? Is that a question of fact? It's a question of fact whether he's telling the truth, Judge. I mean, if you read his testimony, what he admits, he admits that my client told him, I'm not going to take this anymore, and he responded.  Now, he's trying to characterize that as a voluntary quit, but it's very clear that, I mean, the most generous characterization of that is that there's a misunderstanding here. My client, and he never – plus there's no investigation, Judge. It's clearly – it is clearly a huge question of fact that it's unamendable by resolution on summary judgment. I'd like to save a couple minutes for a while. All right. Thank you, Counsel. We'll hear from the employer. May it please the Court. I'm Susan Hilden, representing Apelli West Coast Contractors. The district court correctly found that appellant Jennifer Westendorf did not establish either sexual harassment or retaliation. She didn't have to establish either. All she had to do was raise a material issue of fact. Correct. And she hadn't raised a material issue of fact sufficient to survive summary judgment. And I think it's important to – it's tempting to jump right into the retaliation issue and the termination, since that's what we're talking about at the end of counsel's argument. But I want to kind of step back to what led up to that. And the only alleged sexual harassment set forth by the plaintiff in this case, Ms. Westendorf, she argues in her brief that she testified to a protracted course of sexual harassment. She cites repeatedly to the same seven incidents that we set out in our brief on behalf of West Coast and that the district court recognized as the only seven incidents over her six months of employment. Two of which are not even remotely sexual, where she says that Dan yelled at her because Mario was having her do work in the office instead of being his assistant. So – and then when she alleged that another co-worker, Pat Ellis, told her to F off when she said something about his kidney stones. So we're really not talking about a protracted course of sexual harassment. We're talking about trivial, isolated, fairly petty, though not – admittedly, not the most professional or desirable conduct necessarily. We're not talking about a protracted course of severe or pervasive offense sufficient to establish sexual harassment. Even if we thought that there was no – that there was insufficient evidence of sexual harassment for, you know, an unpleasant workplace environment, does that disqualify her then from maintaining a retaliation claim? No, it does not. And we maintain that the retaliation claim is a separate incident. And it's a little confusing to me why counsel for appellant keeps raising this as part and parcel of the sexual harassment claim. I don't think that there's any authority for that. I think it's a separate issue. And you can establish retaliatory harassment if it rises to the level of an But I contend that they didn't plead that theory or put forth that theory below. What they claimed was a retaliatory discharge based on her having complained on July 29th to Mario and then been terminated. Sorry if I interrupted. You did. I did. I apologize. Can I address – can I address it? Okay. So she can establish retaliation, but it is a separate claim. And she did not testify that she went to Mario and complained on July 29th that there were – that Dan Jocelyn or Pat Ellis were being vengeful and hostile. There was no testimony to that. Well, that was in her complaint to the Nevada Equal Rights Commission. That she testified that she – Not testified, but in her charge to the Nevada Equal Rights Commission, she said that when she complained that there was, in response, more hostility as a result of her complaint. Okay. So if that's in the charge, then – Then it's in play. Okay. So what she testified to, though, regarding what she told Mario, because I think that the district court – the issue on the retaliation claim was the district court found that she did not engage in protected activity. So as to be able to establish a prima facie case of retaliation, the district court said – If we agree that she complained about the comments that she thought were sexually hostile, would that be protected activity? If we agreed that she complained about the comments that she felt were sexually hostile? Would that be protected activity? I think that that could be considered protected activity if the record showed that she went to Mario on July 29th and complained of comments that were sexually hostile. However, that is not what the evidence shows. She testified at length about this, that there were – it was either eight or nine things that she went to testify to Mario about. And she had written those up – not to testify, to complain to Mario about on July 29th. And this was just two weeks after. They've had the July 14th meeting. She's brought up some isolated conduct. They've addressed it. He's gone for two weeks. Now she goes back, and she has a list of eight or nine things, and it's set forth in the brief, and none of them have anything to do with gender or sex. And she doesn't say – If she's complaining that, look, I came in here before. I laid these things out. These guys are making inappropriate comments. I'm really tired of it. I don't think it's right that I should have to put up with this. Mario says, I'll deal with it. And two weeks later, she comes back in to say, these guys are really treating me like garbage in the office. Now, why isn't that sufficiently related? Even though she doesn't say the sexual harassment hasn't stopped. She didn't do that. But she comes in and says, you know, the guys are picking at me because I've complained to you about their sexual comments. Why isn't that sufficient to make out a retaliation? Well, I would submit to you that if she did say that, that could potentially be sufficient to make out a retaliation claim. That's not what she said. What she came in and complained about largely were things that Dan was asking her to do or things that he had confronted her with that she didn't like the way he was confronting her about them, and they were work-related tasks. For instance, she was saying, Dan told me to put this middle bit in a binder, and I told him he could put it in the binder himself. And he says, no, I'm asking you to put it in the binder. That is a perfectly appropriate. There was no inference that he was doing that because of my previous complaints? You know, she didn't raise that. And interestingly, if you look at her previous complaints, her previous complaints were really about Pat Ellis. When they met on July 14th, that was the meeting where she said, everything is fine with how Dan is treating me. Everything has been fine with Dan except for how he has let Pat talk to me, and then she referenced Dan being there when Pat Ellis made a comment about F off. So, really, the conduct she complained about on July 14th was directed to Pat Ellis. That was the conduct she was complaining about. Now, on July 29th, she comes back, and she's complaining about work-related incidents with Dan. And I want to just go through some of these. I was wondering how much she has to be able to show at that point. If he's asking her to do things that are trivial things that no one has ever been responsible for doing before, he is nitpicking her to death. Then why, given the proximity of her prior complaints about sexual harassment, couldn't that be construed as retaliation? Well, that was not how it was presented. I wouldn't say that that could never be construed as retaliation, but she has to show she engaged in a protected activity. Mario doesn't know what she's talking about. That's the problem. It's just two weeks later. They actually had a court reporter come in and record the conversation. Now, Mario doesn't get it. He says, I don't understand what you're talking about. Mario's recounting. Look, appellant said that she came in with eight or nine things to complain to Mario about that she wrote down, all of which have to do with what I would characterize as somewhat petty work disagreements with Dan, but also with her objecting to conduct that was not improper and that Mario correctly considered not improper, including putting a paper in a binder. She doesn't say to Mario, he's doing this because I complained. And, in fact, she really hadn't complained about him because her prior complaint was about Pat Ellis. And so she's telling Mario these things. And Mario says, Mario's statement right after the incident, Westendorf told him about an incident with Jocelyn earlier that day regarding a signature landscape invitation to Hot August Nights where she had responded that nobody from the company would be attending because of Dan's daughter's wedding. And Dan got upset with her and said, don't use my daughter's wedding as an excuse. And then she becomes angry when he says that. She tells him, I don't have to take this crap anymore. And she storms out of the office. So she's actually walked off the job site at that point. That's what she's conveying to Mario. Then she goes on to describe the incident where Dan had asked her to place this sublist in a binder. She told him to do it herself. Mario asked her if Dan wanted her to put the list in a binder, wasn't it her responsibility to do it? She argued that if she did not agree with the way Jocelyn wanted it done, she did not have to do it. He then asked her if he asked her to do something in a certain way and she did not agree, would she do it? And she responded, no, I'm not doing it. So this is what they're discussing at that final meeting. They're not discussing Dan's been vengeful towards her because of a complaint or the guys are being hostile towards her. They're discussing this disagreement she has with Dan about how to do work or about how he's not as nice to her all the time as she would like. But those are the same kind of things she raised before. She had complained before that Dan was angry that Mario and Andy were asking her to work in the office instead of just doing work for him. That's one of the same complaints she brought forward that day. So this appeared to Mario to be her continuing to complain about Dan, but nothing to do with sexual conduct, with sexual hostility or with sexual hostility that had morphed into retaliation. It wasn't presented that way. And based on Mario's undisputed statements, he didn't understand it that way. She's telling him about things that he thinks were inappropriate on her part as far as not doing the job that she was supposed to do. She was a project manager assistant. Her job is to do what her project manager asked her to do. And so in Mario's mind, that's what she's complaining about. Then she says she can't work there any longer. She becomes upset because he asked her to put, look, can you put it all in writing? Because she says she's written it all down, but she doesn't give that log to him. Those were just handwritten notes she's jotted down. She becomes upset. She storms out of the office. She says, I'm not going to work here any longer. I can't work here any longer. He thinks she's resigning. When she tries to get back her job and says, I didn't resign, his decision is, no, I don't want someone working for my company that thinks that they don't have to do their job. And that was a reasonable position. And on those facts, the district court correctly found that she did not establish retaliation. Well, she doesn't have to establish retaliation. I'm sorry. You're correct that she did not raise a sufficient issue of fact to sustain a retaliation claim at the summary judgment level. Thank you. Thank you. Rebuttal. I'd just like to read you. I know it's not good to read stuff, but this is Mr. Ramirez's testimony about the critical meeting. When you know we had the initial complaint by Jennifer, which, again, I brought in a court reporter and I sat down with everybody. Can you speak up a little, please, counsel? And what page of the record are you reading from? I have the deposition. It's in the summary judgment opposition, Your Honor. I don't know. When you know we said page 12 of the deposition, 12 to 13, when you know we had the initial complaint by Jennifer, which, again, I brought in a court reporter and I sat down with I don't know the exact timing of this thing, but I took a week off, went away for vacation. And when I came back, that is when she approached me again. And she said that while I was gone, a lot of crap had happened again. And, again, the first thing I said, why didn't you approach Andy like you're supposed to? Why didn't you approach Chandra like you're supposed to when it happened not a week later? And you know, that is when things she basically felt, and, Mr. Molstad, I can't remember the exact words, but something to the effect that you're not going to do anything about this. And I said, yes, I am. But you know you need to explain to me. You need to put it down in writing. That is when the whole thing developed into I'm not taking this shit anymore. And that is when I said, okay, you're not taking it anymore. Okay. Then I have to escort you out of the building. She did not storm out of the building. We were not talking about other unrelated matters. We're talking about matters. And, Your Honors, I'd ask the Court to look at the case. I think it's the best analysis I've ever seen. Moffitt v. Gene B. Glick Company, 621-F-SUP-244, Operative Language 281. And the Moffitt analysis, Your Honors, is in this Court's five-part analysis of retaliation. Because when you springboard off problems that are caused, eminently predictable, very human problems, caused by sexual harassment, the employer can then not successfully characterize those problems as a reaction, a punitive reaction, as legitimate and non-discriminatory. That reaction, Your Honors, is a critical point. That reaction is illegitimate and it's discriminatory. It's a ratification of the underlying sexual hostility and a ratification of the retaliatory hostility that this Court said in Draper is impermissible. And that's what happened in this case, Your Honors. All right. Thank you. Thank you to both counsels. The case just argued is submitted for a decision by the Court that completes our calendar for the morning. We'll be in recess until 9 a.m. tomorrow morning. All rise.
judges: Arnold, Rawlinson, Bybee